The plaintiff, C.C. (mother), obtained an abuse prevention order, and a one-year extension thereof, under G. L. c. 209A against the defendant, C.C. (father). The parties have three children together, and divorce proceedings between them were ongoing at the time of the 209A application and hearings. The father appeals, arguing that, at the extension hearing, the judge erroneously excluded an affidavit proffered by his counsel and abused his discretion in issuing and extending the order. We affirm.
At the extension hearing, the mother testified that, four days before applying for the 209A order, she had a conversation with the father's sister-in-law in which the sister-in-law told her that, several months prior, the father, a licensed gun owner, had learned about an intimate videotape of the mother with another man. According to the sister-in-law, after finding out about the videotape, the father told his family members to "come get his guns because he was going to use them." The sister-in-law also informed the mother that the father had "recently" come back to get the guns.
At the hearing, the father sought to introduce an affidavit from the sister-in-law denying that the conversation with the mother took place. The judge excluded the affidavit over the father's objection because it would have been impossible for the mother to cross-examine the affiant, who was not present in court. Citing Frizado v. Frizado, 420 Mass. 592 (1995), the father argues on appeal that the judge erred by allowing the mother to introduce hearsay evidence but prohibiting him from introducing the affidavit of the sister-in-law.
Frizado holds that the rules of evidence need not be followed in abuse prevention order proceedings "provided that there is fairness in what evidence is admitted and relied on," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 598, and as long as the judge's evidentiary rulings leave each party a "meaningful opportunity to challenge the other's evidence." Id. at 598 n.5. To be sure, the judge allowed the mother to testify as to hearsay. And the affidavit of the sister-in-law was direct sworn testimony of the sister-in-law, but not hearsay. But we see nothing in Frizado that limits the authority of a judge to allow in only live testimony from witnesses who can be cross-examined. The judge did not preclude the father from cross-examining the mother on the alleged conversation with the sister-in-law nor did the judge prevent the father from testifying that the sister-in-law told him that the alleged conversation never took place. The judge did preclude the father from introducing statements of a witness who was not present to be cross-examined. The father has not met his burden of showing that decision was fundamentally unfair, or that it deprived the father of a meaningful opportunity to challenge the mother's evidence within the meaning of Frizado.
Next, the father argues that the judge abused his discretion in granting and extending the order. See Crenshaw v. Macklin, 430 Mass. 633, 636 (2000) (abuse prevention order extensions reviewed for abuse of discretion and errors of law). General Laws c. 209A permits individuals suffering from abuse to petition for an abuse prevention order, where "abuse" is defined as "(a ) attempting to cause or causing physical harm; (b ) placing another in fear of imminent serious physical harm; (c ) causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1, as appearing in St. 1990, c. 403, § 2. Here, the judge found that the father abused the mother in all three ways. In addition to the gun incident described supra, the mother testified to episodes that occurred between one and four years prior to the hearing in which the father had anal sex with her against her will, causing her to bleed throughout the evening; strangled her during oral sex and sexual intercourse; and forced her to have oral sex with him while he was carrying a gun in his holster. The judge was well within his discretion to credit the mother's testimony, and these acts clearly are instances of all three types of abuse.
The father responds that, whether these events occurred, there was insufficient evidence that the mother reasonably feared imminent serious physical harm which, he claims, is necessary to extend an order based on each kind of abuse. To begin with, there was sufficient evidence in the record that the conversation with the sister-in-law, which occurred four days before the mother applied for the 209A order, put the mother in reasonable fear of imminent serious physical harm. The judge could have credited the mother's testimony that she was scared that the father would use the guns, and that she did not immediately file the application because, at the time of her conversation with the sister-in-law, the children were staying at the father's house, and the mother did not want them to see the police serve him with the order. In addition, the judge appropriately considered the facts that the parties had children together and that the divorce proceedings between them were ongoing. See Iamele v. Asselin, 444 Mass. 734, 740 (2005) (judge should consider, among other things, "ongoing child custody or other litigation that engenders or is likely to engender hostility"). In these circumstances, the judge did not abuse his discretion in finding that the mother was in reasonable fear of imminent serious physical harm.
Next, the father is incorrect that a reasonable fear of imminent serious physical harm is necessary for abuse under c. 209A, § 1, pars. (a ) and (c ). See Callahan v. Callahan, 85 Mass. App. Ct. 369, 374 (2014) ("Although a person seeking an abuse prevention order [and extension] based on 'fear of imminent serious physical harm' must always show that he or she is currently in fear of imminent serious physical harm, and that such fear is reasonable, ... the same is not true of a person who seeks an order [or extension] based on having already been subject to physical harm"). That the mother was not in reasonable fear of imminent serious physical harm from the physical and sexual abuse due to that abuse's temporal distance is thus irrelevant to the judge's finding of abuse under paragraphs (a ) and (c ).
Temporal proximity to the abuse could be relevant to whether the mother is suffering from it, which she must be to obtain an abuse prevention order. G. L. c. 209A, § 3. It also could be relevant to whether there is a "continued need for the order." Callahan, supra. But our cases have made clear that abuse prevention orders may issue to protect a plaintiff from "the continuing impact of past violence," including where a plaintiff "reasonably remains in fear of the abuser." McIsaac v. Porter, 90 Mass. App. Ct. 730, 734 (2016). Indeed, we have upheld abuse prevention orders on this basis even when "there had been no contact between the parties in the past two years." Doe v. Keller, 57 Mass. App. Ct. 776, 779 (2003). Here, the mother testified that, six days before she filed her application, the father "walked into the home like he had never left and the abuse happens-happened with [the father] always behind a closed door so it scared me to just have him walk in brazenly into the house as if he never left." This testimony indicates that the mother continued to fear the father, and the judge did not abuse his discretion in concluding that this fear was reasonable and that there was a continued need for the order. The judge therefore did not err in finding abuse under paragraphs (a ) and (c ), issuing the order, or extending it.
Order extended on June 5, 2017, affirmed.